IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

_____

# FILED

October 19, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

**ROBERT C. LEE TRUST by and
through M. STEPHEN BRANDON,
TRUSTEE,**

and

**MISSTENN RADIOLOGY, P.A.,**

    Plaintiffs-Appellants,

                             Shelby Chancery No. 98-0014-1

Vs.                                       C.A. No. 02A01-9901-CH-00021

**THE PAUL REVERE VARIABLE
ANNUITY INSURANCE COMPANY,
a wholly owned subsidiary of Textron,
Inc.,**

    Defendant-Appellee.

_____
_____

FROM THE SHELBY COUNTY CHANCERY COURT
THE HONORABLE WALTER L. EVANS, CHANCELLOR

Larry E. Parrish, P.C., of Memphis
For Appellants

George T. Lewis, III and
Lori Hackleman Patterson of Memphis
For Appellee

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**


**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This appeal involves a declaratory judgment suit against an insurance company seeking a declaration that a policy of insurance was never in effect and for judgment for the amount of premiums paid. From the order of the trial court granting defendant, The Paul Revere Variable Annuity Insurance Company, (Revere) summary judgment, plaintiff-appellant, Robert C. Lee Trust (Trust) appeals.[1]

The complaint alleges that the Trust was established in 1982, and the trustee is M. Stephen Brandon. The address of both of the Trust and the trustee is 6075 Poplar Avenue, Suite 420, Memphis, Tennessee, 38119. The complaint avers that MissTenn is a Mississippi professional association duly chartered by the State of Mississippi with its principal place of business in Corinth, Mississippi. Plaintiffs allege that Revere's agent solicited the purchase of a life insurance policy on the life of Robert C. Lee, M.D. and obtained the execution of an application for the policy dated June 16, 1994. The application states that the proposed insured is Robert C. Lee, M.D., and the owner and beneficiary of the policy is the Trust. The application further states as pertinent to the issue before the Court:

> (5) The insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while the health of the Proposed Insured . . . remains as stated in the Application. . . .

The complaint alleges that there never was a delivery of the policy and further avers that by means of bank drafts drawn directly from the account of MissTenn, Revere obtained from MissTenn approximately $5,000.00 per month for thirteen months as premiums on the

policy. Plaintiffs aver that there was no policy in effect, and that Revere must refund the amounts paid as premiums.

Revere's answer admits that the application was made and that the premiums were paid but denies that there was no delivery of the policy. It avers that the policy was in full force and effect, and it is entitled to the premiums paid.

The material facts are not in dispute. The Robert C. Lee Trust was established by Dr. Robert C. Lee as settlor in 1982 for the purpose of estate planning. MissTenn, at all material times, was a professional association wholly owned by Dr. Lee. For the purposes of funding the Trust, Dr. Lee arranged to procure insurance on his life, and in June, 1994, Dr. Lee completed and signed an application with Revere for a two million dollar life insurance policy on his life to be owned by the Trust. As stated in the complaint, the application stated that the policy would not take effect unless the policy was delivered while the "health of the Proposed Insured . . . remains as stated in the Application." The application was handled by Revere's agents, Bruce Sartain and Rick Jiminez. The first premium check in the approximate amount of $5,000.00 was paid by MissTenn's check signed by Dr. Lee. By written instrument Dr. Lee authorized Revere to draw monthly premium installments from the MissTenn bank account. On June 20, 1994, the policy of insurance applied for was mailed from Revere's home office in Worcester, Massachusetts, to the agents in Jackson, Mississippi. Upon receipt of the policy from Revere, the agents placed the policy in the United States mail for delivery to Stephen Brandon, trustee for the Robert C. Lee Trust at his address. Brandon denies receiving the policy. Both Brandon and Dr. Lee received notices from Revere concerning the premium payments made from the MissTenn bank account.

In September, 1994, Dr. Lee's father, a Farm Bureau agent, asked Dr. Lee to replace his existing life insurance policy with a policy obtained from his brother, Glenn Lee of Tennessee Farmers Mutual Insurance Company. Dr. Lee agreed and instructed his brother to perform a 1035 Exchange of policies so that there would be no gaps on Dr. Lee's insurance coverage and no tax consequences for the exchange.[2] The existence of the

Revere policy was required to complete an exchange of insurance policies. To initiate this procedure, Dr. Lee signed a Tennessee Farmer's Insurance Form entitled, "Notice Regarding Replacement: Replacing Your Life Insurance Policy," on September 11, 1994, which represented that he currently held a life insurance policy from Revere. On December 25, 1994, Dr. Lee signed a Tennessee Farmer's Life Insurance Company form entitled " Absolute Assignment to Effect Section 1035 Exchange and Cash Surrender," which stated that the Revere policy was in effect on that date.

Revere filed a motion for summary judgment asserting that the undisputed facts show constructive delivery of the policy. Alternatively, Revere asserts that even if no delivery was accomplished, the insured waived the delivery requirement by recognizing, in writing, that the policy was in full force and effect. Plaintiffs also moved for summary judgment, agreeing that no issues of material fact exist.

After a hearing on December 2, 1998, the trial court granted Revere's motion for summary judgment by order entered December 8, 1998. The trust has appealed and presents the sole issue for review as whether the trial court erred in granting Appellee's motion for summary judgment and denying Appellants' motion for summary judgment, finding as a matter of law that the mailing of an insurance policy to a proposed insured constitutes a constructive delivery of said policy and thereby creates a binding policy of insurance, negating the need for an actual delivery of the policy?

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* The parties concede that there are no genuine issues of material fact and that

summary judgment is appropriate.

Although Revere asserts that Mississippi law is controlling on the issue presented, it concedes that the law is the same in both Mississippi and Tennessee. Appellant contends that Tennessee law applies. The applicable law is such that we need not extend this Opinion in this regard.

Appellant contends that the application provision requires actual delivery of the policy to the Trust as the owner of the policy. Revere, on the other hand, contends that its mailing of the policy to its agent for delivery satisfied the application's provision.

*1 Couch on Insurance 3d*, § 14.10 (1996) states:

> Whether delivery has occurred depends upon the intention of the parties as manifested by their acts and words. Similarly, in determining whether there has been a delivery to the insured by a delivery to the agent of the insurer, the intention of the parties as to the purpose and conditions of the delivery to the agent must be considered and given effect.

> The condition of delivery of the policy does not necessarily require an actual or manual delivery. A constructive delivery suffices in lieu of a delivery of the instrument into literal possession of the applicant in the absence of an explicit contractual or statutory provision which makes the effectiveness of the contract dependent upon actual delivery; or a contractual condition which must be fulfilled before delivery can be effective. Ordinarily, the sufficiency of the delivery of a policy is determined not by who has the actual possession of the policy, but who has the right of possession.

*      *      *

1 *Appleman's Insurance Law & Practice* §. 132 (1981) provides:

> 132. **Necessity of delivery - Intention of the Parties**.

> The mere fact that no contract was delivered to the insured is not, of itself, conclusive upon the question as to whether or not the contract is in force and effect. The question as to whether or not a valid delivery has been effected depends chiefly upon the intention of the parties. Thus, where the insurer mails the policy to its agent, the intent with which this action is performed governs in determining the sufficiency of delivery.

> Since delivery is largely a matter of intention, constructive delivery of the contract is sufficient in the absence of policy provisions to the contrary. Thus, where the policy is in the

possession of the insurer's agent, the question may have to be resolved upon the old doctrine of "meeting of the minds" to determine the question of constructive delivery. The very fact that the policy is complete and ready for delivery is, of itself, some evidence that the terms were all agreed upon.

\*          \*          \*

As stated in 19 ALR3d 953:

It is a broad principle of general recognition in numerous cases that, under a policy provision requiring delivery to the insured, in general terms at least, the unconditional transmission of an insurance policy by the company to its agent for delivery to the applicant, where his application has been accepted and the policy issued, with nothing other than delivery remaining to be done by either party, constitutes delivery of the policy to the applicant.

*Id.* at 959-960.

Tennessee has recognized delivery to an agent as an effective delivery of the policy.

This Court in *Bates v. Equitable Life Assurance Society of the United States*, 177 S.W.2d 360 (Tenn. App. 1943) stated:

The first premium had been paid, the insurer had accepted the insured's offer, issued the policy, and *mailed it to its agent for delivery to the insured*. Under these circumstances the formation of the contract had been completed and a manual tradition of the policy was not essential. (citations omitted)(emphasis added).

*Id.* at 363.

In *Yonge v. Equitable Life Assurance Society*, 30 F. 902 (E.D. Tenn. 1887), suit was filed to recover on a life insurance policy. The policy was never actually delivered to the insured but was mailed by the insurance company to the local agent of the company. The Court held that as between the applicant and the company, the policy became effective and binding when placed in the mail to the agent, and "if not then, certainly when it reached the hands of the agent." *Id.* at 902.

Appellant relies upon the holding of this Court in *Blazer Ins. Agency v. Jim Cogdill Dodge*, 809 S.W.2d 745 (Tenn. App. 1991). In *Blazer,* the insurance agency sued insured to recover unpaid premiums on a liability policy canceled by the insured prior to maturity.

The issues in the case were whether the insured had a right to cancel the policies since he never received them, whether the insured would be liable for the premiums on the policies until the time he gave notice of cancellation or until the policies were actually canceled, and finally, whether the amount of the premiums could be calculated on a pro rata basis or on a " short rate" cancellation penalty basis. Appellant states in its brief that in both the *Blazer* case and the case before the Court, the question is whether or not the insurance company is entitled to receive payments for a period during which the insurance company claims to have been bound by an issued policy even though the insurance company had not delivered the policy. Appellant's reliance on *Blazer* is misplaced. The principle issue in the case is not whether the insured was obligated to pay the premium, but rather whether the unpaid premiums would be determined upon a "short rate" or pro rata basis. The Court considered the policy as effectively delivered, and this Court modified the trial court's judgment against the insured to fix the insured's liability for premiums on a pro rata basis. *Blazer* actually stands for the proposition asserted by Revere in the instant case. We hold, therefore, that the policy in the instant case was effectively delivered pursuant to the requirements of the application.

In the case at bar, Dr. Lee's application required only that delivery must occur while he was in the same state of health that he was in at the time of application. The issuance of the policy by Revere, the possession of the policy by the insurance agent, and the witnessed mailing of it to the Trustee by the agents constituted a constructive delivery of the policy. Further, the parties' actions clearly show that they intended to be bound by the policy. Dr. Lee and Mr. Brandon allowed premiums to be paid, represented to other parties that the policy was in force, and never took any action manifesting any objection to the policy being in force. We agree with the trial court that the policy was in force and had Dr. Lee died, the insurance company would have been obligated to pay the $2 million coverage. To allow the appellants to now deny the policy's existence would be unjust.

Moreover, the record is undisputed that the premiums paid on the policy were paid

by MissTenn, and there is nothing in the record to indicate that any other entity has any right to receive a refund of premiums paid by MissTenn. The summary judgment in favor of Revere is final as to MissTenn and is not assailed in this appeal.

Accordingly, the order of the trial court granting summary judgment is affirmed, and the case is remanded to the trial court for such further proceedings as are necessary. Costs of the appeal are assessed against the appellant.


_____

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**


_____

**ALAN E. HIGHERS, JUDGE**


_____

**HOLLY KIRBY LILLARD, JUDGE**